UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| SHAYNE MICHART<br>50 Summit Ave, Apt. 324<br>Hagerstown MD 21740,<br><br>    Plaintiff,<br><br>-against-<br><br>GEMA, INC. D/B/A/ DUNKIN' DONUTS,<br>1204 Cabinwood Place<br>Silver Spring, MD 20904<br><br>RIDDHI SIDDHI, INC. D/B/A/ DUNKIN' DONUTS,<br>1204 Cabinwood Place<br>Silver Spring, MD 20904<br><br>NICK PATEL<br>1204 Cabinwood Place<br>Silver Spring, MD 20904<br><br>ROMA PATEL<br>1204 Cabinwood Place<br>Silver Spring, MD 20904<br><br>DUNKIN DONUTS FRANCHISING LLC<br>130 Royall Street<br>Canton MA 02021<br><br>and<br><br>DUNKIN BRANDS, INC.<br>130 Royall Street<br>Canton MA 02021<br><br><br>    Defendants. | **COMPLAINT**<br>**AND JURY DEMAND**<br><br>1:21-cv-2151 |

1

## NATURE OF THE ACTION

1. This is a civil rights action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981 *et seq.*, and the Maryland Fair Employment Practices Act, S.G. § 20-602, *et seq.*, for hostile work environment and unlawful employment actions based on sex and retaliation.

## PARTIES

2. Plaintiff, Shayne Michart, is an individual and a resident of Washington County, Maryland.

3. Defendant GEMA, Inc., d/b/a Dunkin' Donuts, is a for-profit corporation doing business in Washington County, Maryland, and had fifteen or more employees for each working day in each of 20 or more calendar weeks in the calendar year 2020.

4. Defendant Riddhi Siddhi, Inc., d/b/a Dunkin' Donuts, is a for-profit corporation doing business in Washington County, Maryland and had fifteen or more employees for each working day in each of 20 or more calendar weeks in the calendar year 2020.

5. Defendant Nick Patel is the owner of GEMA, Inc. and Riddhi Siddhi, Inc., which conducts business as a franchisee of Dunkin' Donuts in Washington County, Maryland.

6. Defendant Roma Patel is the wife of Nick Patel. Mrs. Patel works with her husband in the operation and management of their Dunkin' Donuts stores in Washington County, Maryland.

7. Upon information and belief, Defendant Dunkin' Donuts Franchising LLC is a for-profit corporation with principal place of business in Canton, Massachusetts, which contracted with Defendants GEMA Inc., Riddhi Siddhi, Inc., Nick Patel and Roma Patel to provide franchising services in Hagerstown, Maryland.

8. Upon information and belief, Defendant Dunkin' Brands is a for-profit corporation with principal place of business in Canton, Massachusetts, which contracted with Defendants GEMA Inc., Riddhi Siddhi, Inc., Nick Patel and Roma Patel to provide franchising services in Hagerstown, Maryland.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. §1331 (federal question) as this civil action is brought pursuant to the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.,* and 28 U.S.C. § 1337, as an action concerning a federal statute regulating commerce.

10. Venue is proper in this District pursuant to 42 U.S.C. § 2000e-5(f) because the unlawful employment practice is alleged to have occurred in this District.

## ADMINISTRATIVE PROCEDURES

11. On October 21, 2020, and December 14, 2020, Mr. Michart timely cross-filed a claim of discrimination based on sex and retaliation against the Defendants with the Maryland Commission on Civil Rights and the U.S. Equal Employment Opportunity Commission.

12. Mr. Michart received his "Right to Sue" letter on May 24, 2021.

13. All conditions precedent to the initiation of this lawsuit have been fulfilled.

14. Plaintiff has exhausted his administrative remedies as required by Title VII and the Maryland Fair Employment Practices Act.

## FACTUAL ALLEGATIONS

15.     Plaintiff Shayne Michart began working for the Defendants GEMA Inc. and Riddhi Siddhi on January 14, 2020 as a full-time crew member for various Dunkin' Donuts stores in Hagerstown, Maryland, and was terminated on September 23, 2020.

16.     Mr. Michart understood that he was an employee of Dunkin' Donuts and that he had obligations to comport himself according to specific rules and regulations of Dunkin' Donuts provided to him via training at Dunkin' U, an educational program of Defendants Dunkin' Brands and Dunkin' Franchising LLC that he was required to attend.

17.     Upon information and belief, he was required to sign rules and regulations and a conduct policy at the outset of his employment that identified activities that Defendants Dunkin' Brands and Dunkin' Franchising LLC considers to be contrary to acceptable business practices.

18.     Upon information and belief, the franchise agreement signed by Defendants required that GEMA Inc and Riddhi Siddhi operate their Dunkin' Donut shops in strict conformity with the methods, standards, and specifications prescribed by Dunkin' Brands and Dunkin Franchising LLC, and using supplies and equipment provided by Dunkin' Brands and Dunkin' Franchising LLC.

19.     Mr. Michart primarily worked at the stores located at the following addresses: 18233 Maugans Ave, Hagerstown, Maryland, 21740 ("Maugans Ave") and 18206 Oak Ridge Drive, Hagerstown, Maryland, 21740 ("Oak Ridge Drive").

20.     Nick and/or Roma Patel are the owners of the above Dunkin' Donuts locations. Throughout Mr. Michart's employment at the Maugans Ave and Oak Ridge Drive store

locations, his payment was rendered through Mr. and Mrs. Patel's franchisee businesses existing under the legal entities of GEMA, Inc. and Riddhi Siddhi, Inc..

21. Upon information and belief, Defendants Dunkin' Brands and Dunkin' Donuts Franchising LLC contracted with Defendants GEMA Inc., Riddhi Siddhi, Inc., Nick Patel, and Roma Patel to provide franchising services in Hagerstown, Maryland, pursuant to which Defendants Dunkin' Brands and Dunkin' Donuts Franchising LLC supervised and monitored the compliance of Defendants GEMA Inc and Riddhi Siddhi, Inc. with the extensive standards and work rules required by the franchise contract signed by these parties, including but not limited to labor laws and labor practices.

22. Pursuant to these contracts, the Defendants provided access to instructional materials and training created by Defendants Dunkin' Brands and Dunkin' Donuts Franchising LLC to Plaintiff, based on which Plaintiff was trained regarding the rigorous requirements of Defendants Dunkin' Brands and Dunkin' Donuts Franchising LLC for the baking and sale of donuts and related products to the public. This included training on labor standards and legal requirements, such as non-discrimination and non-harassment.

23. Upon information and belief, Defendants Dunkin' Brands and Dunkin Donuts Franchising retained for themselves control of the terms and conditions of employment at Defendants GEMA Inc. and Riddhi Siddhi, including without limitation, the requirement that employees of Defendants GEMA Inc. and Riddhi Siddhi be trained in and abide by the rigorous standards required by the franchising contract of Dunkin' Brands and Dunkin' Donuts Franchising, such as authority to require GEMA and Riddhi Siddhi employees and managers to submit to training and to obey applicable laws, work rules, and sexual harassment policies, and to set employment conditions, employee discipline and the ability

to inspect books, records and tax returns, including employee records, at the premises pursuant to the franchising contract.

24.     Upon information and belief, Dunkin' Brands and Dunkin' Donuts Franchising participated in the daily supervision of GEMA and Riddhi Siddhi employees by providing continuing advisory assistance to managers and employees with supplies, production issues, operation, merchandising and promotion and other matters, and to conduct periodic inspections.

25.     Upon information and belief, GEMA Inc and Riddhi Siddhi were under contractual obligation to terminate their employees in certain circumstances.

26.     Defendants Dunkin' Brands Inc. and Dunkin' Franchising LLC and their predecessors in interest spend and have spent considerable resources monitoring compliance regulating with labor laws by franchisees, and based thereon have required that franchisees change their labor practices or be terminated as franchisees.

27.     Defendants Dunkin' Brands and Dunkin' Donuts Franchising LLC became aware of the specific discriminatory practices alleged by Plaintiff, and advised they were conducting an investigation of the labor practices of Defendants GEMA Inc and Riddhi Siddhi, Inc. regarding Plaintiff's allegations.

28.     Based on these allegations, Defendants Dunkin Brands, Inc., and Dunkin Franchising LLC had the authority, right and duty, whether by contract or assumption, to exercise significant control as to how Plaintiff did his job and the terms and conditions under which he did so.

29.     Based on these allegations, Defendants Dunkin Brands, Inc., and Dunkin Franchising LLC were joint employers of Plaintiff.

30. Based on these allegations, Defendants Dunkin Brands, Inc., and Dunkin Franchising LLC are vicariously liable for the actions of Defendants GEMA Inc. and Riddhi Siddhi, Inc. by the nature of the control retained in the franchise agreement or in actual practice over Defendants GEMA Inc. and Riddhi Siddhi.

31. Mr. Michart is a transgender man, and is a member of a protected group based on sex, gender identity, and gender expression.

32. Mr. Michart notified supervisor Kelly Motley in his initial interview that he is transgender, that he identified as a man, that he used male pronouns, and that his name is Shayne Michart.

33. Mr. Michart requested that his name and sex be referenced as indicated during his employment, including employment paperwork, but Defendants failed and refused to use Mr. Michart's correct name and sex on any of the employment documents.

34. Mr. Michart was qualified for his position, as demonstrated by Defendants continuing his employment, and terminating him for a non-performance related reason.

35. He was also qualified for his position by reason of attending education provided by Dunkin' U, an educational program created and provided by Defendants, including continual in-service training.

36. He was the only transgender man at the stores.

37. He requested that managers, direct supervisors, and co-workers address him as "Shayne" and use male pronouns.

38. Soon after beginning employment, Mr. Michart began experiencing gender discrimination from his managers, direct supervisors, and co-workers.

39. Plaintiff was subjected to inappropriate sexual and transphobic jokes about himself from on or about March 4, 2020 to on or about September 23, 2020.

40. During that time, Plaintiff was subjected to misgendering, meaning that they intentionally referred to Plaintiff as a woman in the presence of managers, supervisors, and coworkers, with the intent and effect of using Plaintiff's gender identity to humiliate him as a means of harassment. Plaintiff was referred to as "she," "it," "they," and "wannabe man."

41. Plaintiff was also disciplined for fabricated performance issues, was restricted from having work breaks, and was refused taking home unsold donuts and coffee.

42. In contrast, Mr. Patel and the Respondent's management allowed his cisgender (non-transgender) coworkers to take work breaks and to take home unsold donuts and coffee.

43. On or around March 24, 2020, Mr. Michart was passed up for an expected promotion to Crew Trainer, and the position was instead given to Bridget Neil, a now-former employee, who was new to the Company at the time and had much less experience than Mr. Michart.

44. Ms. Motley, one of the decision makers behind the failure to promote Plaintiff, expressed to Plaintiff that she was upset with him for reporting concerns about the promotion and the discrimination.

45. Plaintiff was never provided an explanation for the denied promotion.

46. Even after Ms. Neil quit her job, Mr. Michart was not formally promoted to crew trainer, despite being assigned the task of training other employees in accordance with the role and responsibilities of the crew trainer position.

47. On or about March 4, 2020, supervisor Kelly Motley made unwanted sexual comments and advances towards him in the workplace, including "Shayne, you know you make me wet."

48. Ms. Motley also made similar comments and misgenderings on or about April 14, 24, May 3, 17, June 13, 16, and 28, 2020.

49. Plaintiff complained to Ms. Motley that these comments were discriminatory based on sex and gender identity, but she took no prompt or effective corrective action.

50. When Ms. Motley hired her cousin Hugh Berry as a Crew Member in May 2020, she pointedly said to Plaintiff that she was "glad I finally hired a man," a reference to his gender identity as a male.

51. On or about March 7, 2020, Ms. Motley referenced menstruation in relation to Mr. Michart, and stated "Go ahead Shayne and part the red sea like Moses."

52. On or about March 7, 2020, Ms. Bridget Neil, a co-worker, referred to Plaintiff as "it."

53. Ms. Neil made the same reference on many occasions throughout his time working there, including on or about March 13, 23 and 28, 2020.

54. Co-worker Hugh Berry intentionally misgendered Plaintiff on or about May 30, 2020.

55. Mr. Berry further misgendered Plaintiff on or about June 13 and 28, 2020.

56. Co-worker Bradley intentionally misgendered Plaintiff on or about May 15, 2020, and called Plaintiff a "wannabe man."

57. Mr. Michart found these comments and misgenderings to be very offensive, as would any reasonable transgender person.

58. Mr. Michart found, as would any reasonable transgender person, that these comments and misgenderings interfered with his ability to perform his work because the statements humiliated him, made him feel that he was being watched by Ms. Motley, Ms. Neil, and others, which interfered with his concentration regarding his work. As a result, he made mistakes during the performance of his duties, including but not limited to putting an incorrect number of donuts on the shelf in contravention of store policy.

59. Plaintiff was disciplined for putting an incorrect number of donuts on the shelf.

60. Kossi, a co-worker, often baked more than the right number of donuts in the morning, but he was not disciplined.

61. Mr. Michart reported these incidents to the Companies.

62. From on or about April 27, 2020 to on or about July 25, 2020, Plaintiff made the Respondent's management team aware of the aforementioned sexual and anti-transgender harassment.

63. On April 27, 2020, Plaintiff reported his concerns about discrimination and promotion denial because of his transgender status to Human Resources Director Cristal Saxon.

64. She asked "You're 'a transgender,' what does that mean?" with a disparaging tone and facial expression. When Plaintiff explained that he had transitioned from female to male, she asked personally demeaning questions irrelevant to an investigation of discrimination, such as "so were you born male or female?" and "do you have female body parts?" She also referred to Plaintiff as "ma'am."

65. Plaintiff orally reported his concerns to the store manager and the owner of the Companies, Nick and Roma Patel, on or about April 30, 2020. He also reported these

concerns to them on or about May 15, 2020, July 25, 2020, August 25, 2020, and September 23, 2020.

66. On or around July 25, 2020, Plaintiff exchanged text messages with Roma Patel about the discriminatory treatment.

67. Defendants did not address his concerns or take prompt and effective corrective actions.

68. On or around May 14, 2020, Ms. Motley hired her cousin Hugh Berry as a Crew Member. Shortly after Ms. Motley hired Mr. Berry, Ms. Motley told Mr. Michart that she was "glad [she] finally hired a man."

69. Mr. Berry consistently misgendered Mr. Michart, dismissively referring to him as "she" in front of coworkers, including supervisors, even though Mr. Berry was fully aware that Mr. Michart's preferred gender pronouns were he/him/his.

70. The harassment based on sex continued unabated throughout the Summer of 2020, and the Defendants did not take prompt or effective action to stop it.

71. Mrs. Patel took no action to help remedy or address Plaintiff's complaints about the discriminatory treatment. Rather than address the issue, Mr. and Mrs. Patel decided to terminate the Plaintiff's employment on September 23, 2020, less than two months after reporting his concerns directly to them.

72. On that date of September 23, 2020, Roma and Nick Patel physically came to the Maugans Ave store property during Mr. Michart's shift to personally tell him to "get the fuck off my property." Mrs. Patel went on to say, "Get off my property, I know what you are."

73. Plaintiff's employment was thereby terminated.

74. Plaintiff sought unemployment benefits, but was denied the benefits because, upon information and belief, Defendants GEMA Inc, Riddhi Siddhi, Nick Patel and/or Roma Patel affirmed that Plaintiff was terminated for violation of a work rule, which they knew to be untrue, but did so in retaliation for his complaints.

75. Plaintiff has attempted to but been unable to secure employment, enduring significant financial hardship and periods of homelessness.

## CAUSES OF ACTION

### COUNT ONE
### Hostile Work Environment Because of and Motivated by Sex
### (42 U.S.C. § 2000(e) and S.G. § 20-602, *et seq.*)

76. Plaintiff incorporates all previous allegations.

77. Plaintiff, Mr. Michart, is a member of a protected group based on sex and gender identity.

78. Mr. Michart was subjected to harassment and a hostile working environment based on his gender, gender identity, and gender expression, as detailed above.

79. This harassment and hostile working environment was severe and pervasive, based on the nature of the harassment, as detailed above, including statements expressing animus towards Mr. Michart's gender, gender identity, and gender expression during the 300 days prior to Mr. Michart's EEOC complaint, and prior statements as part of a continuing course of conduct by the Defendants and their employees, about Mr. Michart's gender, gender identity, and gender expression, all of which were designed to and were likely to humiliate Mr. Michart, and which did have that effect on Mr. Michart.

80. The effect of the harassment and hostile working environment complained of above has been to deprive Mr. Michart of equal employment opportunities and to otherwise

adversely affect Mr. Michart's status as an employee because of Mr. Michart's sex in violation of Title VII of the Civil Rights Act of 1964 and the Maryland Fair Employment Practices Act.

81. The Defendants were on notice of the discriminatory practices and the hostile working environment because Defendants and their employees, including Plaintiff's direct supervisors, participated in and witnessed said practices, as set forth above.

82. The Defendants were on notice of said practices and hostile working environment because Plaintiff complained orally and in writing to Defendants regarding said practices, as set forth above.

83. Defendants failed and refused to investigate and take prompt and effective action to stop the hostile working environment.

84. By creating, condoning, and perpetuating a hostile work environment because of Mr. Michart's gender, gender identity, and gender expression, Defendants have acted intentionally, maliciously, and/or recklessly.

85. As a direct and proximate result of the acts complained of herein, Mr. Michart has suffered and will continue to suffer loss of compensation and benefits, mental and emotional distress, humiliation, loss of reputation, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

86. Defendants demonstrated bias against Mr. Michart when he complained of harassment and hostile work environment based on sex perpetuated by his supervisor and other coworkers, and Defendants failed and refused to take prompt and effective action to stop the harassment.

87. Defendants continued to allow a hostile work environment against Mr. Michart by delaying and denying leave based on his gender identity, as set forth above, and ultimately terminating his employment based on his gender, gender identity and gender expression.

88. Because of the harassment suffered by Plaintiff, he is entitled to all legal and equitable remedies available under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Maryland Fair Employment Practices Act, S.G. § 20-602, *et. seq.*

## COUNT TWO
### Discrimination Because of and Motivated by Sex
### (42 U.S.C. § 2000(e), *et seq.*, S.G. § 20-602, *et seq.*)

89. Mr. Michart incorporates all previous factual allegations.

90. Plaintiff is a member of a protected group based on sex and his gender identity.

91. Mr. Michart was qualified for his position, as demonstrated by Defendants continuing his employment, and terminating for a non-performance related reason.

92. Mr. Michart suffered adverse employment actions, as his promotion was denied in March 2020 and his employment was terminated in September 2020.

93. Mr. Michart was treated less favorably than similarly situated employees outside of his protected group, such as Bridget Neil, who held a similar job and title outside of Mr. Michart's protected category.

94. The effect of the Defendants' actions has been to deprive Mr. Michart of equal employment opportunities as an employee because of sex in violation of Title VII of the Civil Rights Act of 1964, and the Maryland Fair Employment Practices Act.

95. Defendants' failure to promote Mr. Michart was because of animus based on Mr. Michart's gender, gender identity and gender expression.

96. Defendants' termination of Mr. Michart was because of animus based on Mr. Michart's gender, gender identity and gender expression.

97. In terminating Plaintiff, Mrs. Patel made reference to Mr. Michart's gender identity, stating "I know what you are."

98. Defendants acted intentionally, maliciously, and/or recklessly in terminating Mr. Michart because of Mr. Michart's gender, gender identity, and gender expression.

99. As a direct and proximate result of the acts complained of herein, Mr. Michart has and will continue to suffer loss of compensation, wages, salary and bonuses, past benefits, future pecuniary losses, mental and emotional distress, humiliation, loss of reputation, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

100. Because of the discrimination suffered by Plaintiff, Mr. Michart is entitled to all legal and equitable remedies available under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, *et seq,* and the Maryland Fair Employment Practices Act, S.G. § 20-602, *et. seq.*

### COUNT THREE
### Retaliation
### (42 U.S.C. § 2000(e), *et seq.*, S.G. § 20-602, *et seq.*)

101. Mr. Michart incorporates all previous factual allegations.

102. Plaintiff was subjected to harassment and a hostile working environment because of retaliation.

103. Mr. Michart engaged in protected activity by complaining to Defendants about discrimination based on his gender, gender identity, and gender expression.

104. Mr. Michart was threatened with and subjected to tangible employment actions and materially adverse employment actions by Defendants and their employees.

105. Defendants were aware of these threats of retaliation.

106. This harassment and hostile working environment was severe and pervasive, based on the nature of the harassment, including statements expressing anger and upset verbal threats toward Mr. Michart because of his complaints during the 300 days prior to Mr. Michart's EEOC complaint.

107. The hostile working environment that Defendants allowed to flourish in the workplace would have dissuaded a reasonable person from filing discrimination complaints.

108. This harassment and hostile working environment because of retaliation was severe and pervasive during the 300 days prior to Mr. Michart's EEOC complaint, based on the many incidents of harassment.

109. The effect of the harassment and hostile working environment complained of above has been to deprive Mr. Michart of equal employment opportunities and to otherwise adversely affect Mr. Michart's status as an employee because of retaliation in violation of Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights Act of 1991, and the Maryland Fair Employment Practices Act.

110. Defendants were on notice of said retaliation and retaliatory hostile work environment because Defendants and their employees, including Plaintiff's direct supervisors, participated in and witnessed said practices.

111. Defendants were on notice of said practices and hostile working environment because Plaintiff complained orally and in writing to Defendants regarding said practices.

112. Defendants failed and refused to investigate and take prompt and effective action regarding said practices.

113. Defendants failed and refused to investigate and take prompt and effective action to stop the hostile working environment.

114. Mr. Michart was threatened with and subjected to tangible employment actions and materially adverse employment actions by Defendants.

115. By creating, condoning, and perpetuating a hostile work environment because of retaliation, Defendants have acted intentionally, maliciously, and/or recklessly.

116. As a direct and proximate result of the acts complained of herein, Mr. Michart has suffered and will continue to suffer loss of compensation and benefits, mental and emotional distress, humiliation, loss of reputation, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

117. Because of the harassment Plaintiff suffered because of retaliation, he is entitled to all legal and equitable remedies available under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981b, *et seq,* and the Maryland Fair Employment Practices Act, S.G. § 20-602, *et. seq.*

118. The effect of Defendants' actions has been to deprive Mr. Michart of equal employment opportunities as an employee because of retaliation for Mr. Michart's protected activity in violation of Title VII of the Civil Rights Act of 1964, and the Maryland Fair Employment Practices Act.

119. By complaining to Defendants about the discriminatory practices and hostile working environment complained of above, Mr. Michart engaged in conduct protected by Title VII and the Maryland Fair Employment Practices Act.

120. Following and because of Mr. Michart's protected activity, Mr. Michart was threatened with and subjected to termination by Defendants because of his complaints of discrimination and harassment.

121. These actions were materially adverse to Mr. Michart because they would dissuade a reasonable employee from making or supporting a charge of discrimination.

122. As a direct and proximate result of the acts complained of herein, Mr. Michart has suffered and will continue to suffer loss of compensation and benefits, mental and emotional distress, humiliation, loss of reputation, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

123. By engaging in the foregoing conduct, the Defendants have intentionally retaliated against Mr. Michart with malice or reckless indifference to Plaintiff's federally protected rights to oppose practices that are prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Maryland Fair Employment Practices Act, S.G. § 20-602, *et. seq.*

**PRAYER FOR RELIEF:** Plaintiff respectfully requests the following relief:

A. Declare that the acts, practices, and omissions complained of herein are unlawful and violate Title VII of the Civil Rights Act of 1964, and the Maryland Fair Employment Practices Act;

B. Permanently enjoin Defendants, and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from

engaging in the unlawful conduct of discriminating against employees who are transgender and/or who have undergone or are undergoing a gender transition;

C. Order Defendants to institute and carry out policies, practices, programs, and training which provide equal employment opportunities for employees who are transgender, have undergone a gender transition, or are undergoing a gender transition, and which eradicate the effects of Defendants' past and present unlawful employment practices;

D. Order Defendants to re-hire Plaintiff and restore him to his job with its attendant benefits, and to make him whole;

E. Order other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices;

F. Direct Defendants to pay for past and future non-pecuniary losses resulting from the unlawful practices complained of in the foregoing paragraphs, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in an amount to be determined at trial;

G. Direct Defendants to pay Plaintiff back pay, in an amount to be determined at trial;

H. Award Plaintiff's attorneys' fees, costs, and disbursements as provided by law;

I. Direct Defendants to pay Plaintiff punitive damages, in an amount to be determined at trial; and

J. Award such additional relief as justice may require.

Plaintiff demands trial by jury.

DATED:       August 21, 2021

Respectfully submitted,

LAW OFFICE OF JANET L. EVELAND
BY:      /s Janet L. Eveland
JANET L. EVELAND (07817)
511 East Patapsco Avenue
Baltimore, MD 21225
Tel (410) 772-8980
Fax (410) 772-8988
jeveland@evelandlaw.com

LAW OFFICE OF JILLIAN T. WEISS, P.C.
BY:       /s Jillian T. Weiss
JILLIAN T. WEISS (seeking *pro hac vice* admission)
775 Fourth Avenue
P.O. Box 320173
Brooklyn, New York 11232
Tel (845) 709-3237
Fax (845) 684-0160
jweiss@JTweisslaw.com

Attorneys for
Plaintiff Shayne Michart